IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| J.G.G., *et al.*,<br><br>*Plaintiffs–Petitioners*,<br><br>v.<br><br>DONALD J. TRUMP, in his official capacity as President of the United States, *et al.*,<br><br>*Defendants–Respondents*. | Case No: 1:25-cv-00766 |

**PLAINTIFFS' RESPONSE TO DEFENDANTS' NOTICE**

On March 16, 2025, Defendants submitted a Notice explaining why they believed their actions implementing the Proclamation were consistent with this Court's Temporary Restraining Orders. However, in addition to the numerous media reports and publicly available data suggesting that Defendants may have violated the Court's Orders, the government's own Notice raises serious questions. Plaintiffs therefore respectfully request that the Court seek immediate clarification from Defendants, in one or more sworn declarations, about their conduct regarding this Court's Orders.

**First,** the government's letter states that the Court's Order was issued at 7:26 pm on Saturday March 15. But that was the time the Court's *written* Order appeared on PACER. During the Saturday hearing, between approximately 6:45 pm ET and 6:48 pm ET, this Court orally and unambiguously directed the government to turn around any planes carrying individuals being removed pursuant to the AEA Proclamation:

> [T]hat you shall inform your clients of this immediately, and that any plane containing these folks that is going to take off or is in the air needs to be returned to the United States,

> but those people need to be returned to the United States. However that's accomplished, whether turning around a plane or not embarking anyone on the plane or those people covered by this on the plane, I leave to you. But this is something that you need to make sure is complied with immediately.  Tr. 43.

That oral Order of course carries no less weight than the Court's written Order.

**Second**, Plaintiffs remain extremely concerned that, regardless of which time is used, the government may have violated the Court's command. The government states that "some gang members subject to removal under the Proclamation had already been removed from *United States territory* under the Proclamation before the issuance of this Court's second order. (emphasis added).[1] That phrasing strongly suggests that the government has chosen to treat this Court's Order as applying only to individuals still on U.S. soil or on flights that had yet to clear U.S. airspace as of 7:26pm (the time of the written Order).  If that is how the government proceeded, it was a blatant violation of the Court's Order.

Whether or not the planes had cleared U.S. territory, the U.S. retained custody at least until the planes landed and the individuals were *turned over to foreign governments*.  And the Court could not have been clearer that it was concerned with losing jurisdiction and authority to order the individuals returned if they were handed over to foreign governments, not with whether the planes had cleared U.S. territory or had even landed in another country.

> THE COURT: Okay. But then I would assume that means that they [the five named Plaintiffs] are either not on the planes or that they will not be removed from the planes

---

[1] The government refers to the "second" order to distinguish it from the TRO order issued the morning of March 15 as to just the named Plaintiffs.

and *will be brought back once the planes land in El Salvador*. Is that fair? Tr. 5 (emphasis added).

> THE COURT: Again, just so we are clear, if planes have already landed and *discharged their occupants*, aside from the five plaintiffs I enjoined earlier, then this order -- I don't have jurisdiction to require their return. (Tr. 44, discussing class TRO) (emphasis added).

And based on publicly available information, it appears that there were at least two flights that took off during the hearing but landed even after this Court's *written* Order, meaning that Defendants could have turned the plane around without handing over individuals subject to the Proclamation and this Court's TRO. Moreover, although that information was obviously in Defendants' possession, Plaintiffs nonetheless emailed counsel for the government with the information about these two flights immediately after the hearing concluded.

1. GlobalX Flight 6143 departed Harlingen, Texas at 5:26 p.m. EDT and landed in Comayagua, Honduras at 7:36 p.m. EDT.[2]

2. GlobalX Flight 6145 departed Harlingen, Texas at 5:45 p.m. EDT and landed in San Salvador, El Salvador at 8:02 p.m. EDT.[3]

**Third**, even if only the written Order is relevant, and even if the Court had only meant to order Defendants to turn the planes around if they were still in U.S. territory (neither of which is plausible), Plaintiffs still have serious concerns about the government's actions. According to at least one media report, one of the planes departed the U.S. *after* the *written* Order was issued.

---

[2] https://www.flightaware.com/live/flight/GXA6143

[3] https://www.flightaware.com/live/flight/GXA6145/history/20250315/1930Z/KHRL/MSLP

*See* Marianne LeVine, et al., "White House Official Says 137 Immigrants Deported Under Alien Enemies Act," Wash. Post (Mar. 16, 2024), https://www.washingtonpost.com/immigration/2025/03/16/alien-enemies-act-venezuela-el-salvador-prison/. That account is consistent with the publicly available flight data indicating that GlobalX Flight 6122 departed Harlingen, Texas at 7:37 p.m. EDT and landed in Comayagua, Honduras at 9:46 p.m. EDT. Plaintiffs also informed Defendants about this flight immediately after the hearing. [4]

Beyond the concerns raised by the government's own letter, there has been significant media reporting that Defendants may have defied the Court's Order. Axios, for instance, reported that White House Deputy Chief of Staff Stephen Miller and Department of Homeland Security Secretary Kristi Noem chose not to turn the planes around.[5] Officials claimed that they could ignore this Court's order because the planes were already over international waters.

The Axios article was later updated with a statement from White House Press Secretary Karoline Leavitt, which said: "The Administration did not 'refuse to comply' with a court order. The order, which had no lawful basis, was issued after terrorist TdA aliens had already been removed from U.S. territory. The written order and the Administration's actions do not conflict. Moreover, as the Supreme Court has repeatedly made clear — federal courts generally have no jurisdiction over the President's conduct of foreign affairs, his authorities under the Alien Enemies Act, and his core Article II powers to remove foreign alien terrorists from U.S. soil and

---

[4] Two more flights, GlobalX Flight 6144 and GlobalX Flight 6123, departed Comayagua, Honduras and landed in San Salvador, El Salvador well after the Court's orders. On information and belief, these may have been continuations of either Flight 6143 or 6122. The government should provide information on these flights.

[5] https://www.axios.com/2025/03/16/trump-white-house-defy-judge-deport-venezuelans.

repel a declared invasion. A single judge in a single city cannot direct the movements of an aircraft carrier full of foreign alien terrorists who were physically expelled from U.S. soil." *See also* "Trump administration ignores judge's order to turn deportation planes around: Sources," Katherine Faulders, ABC News, https://abcnews.go.com/US/trump-admin-ignores-judges-order-bring-deportation-planes/story?id=119857181; Marianne LeVine, et al., "White House Official Says 137 Immigrants Deported Under Alien Enemies Act," Wash. Post (Mar. 16, 2024), https://www.washingtonpost.com/immigration/2025/03/16/alien-enemies-act-venezuela-el-salvador-prison/ (interviewing a White House official: "'We believe this is a baseless legal ruling no matter when the flights took off,' the official said, adding that the fact that two of the three deportation flights were out of the country before the judge's order 'strengthens our case.'"); Mattathias Schwartz, "With Deportations, Trump Steps Closer to Showdown with Judicial Branch," N.Y. Times (Mar. 16, 2025), http://nytimes.com/2025/03/16/us/constitutional-crisis.html.

Finally, some of the public comments made by Defendants and the President of El Salvador reinforce Plaintiffs' concerns. For example, on March 16, at 7:46 a.m. EDT, El Salvador President Nayib Bukele tweeted a New York Post headline reading, "Fed judge orders deportation flights carrying alleged Venezuelan gangbangers to return to US, blocks Trump from invoking Alien Enemies Act," and added the comment "Oopsie … Too late 😂." Secretary of State Marco Rubio re-tweeted this post from his personal X account.

In sum, given the careful phrasing of the government's letter, the publicly available data, the government's own statements, and the numerous media reports that the government may have chosen not to abide by the Court's Order, Plaintiffs request that the Court immediately

direct the government to submit one or more sworn declarations from individuals with direct knowledge of the facts clarifying the following:

1) whether any flight with individuals subject to the Proclamation took off *after* either the Court's written or oral Orders were issued;

2) whether any flight with individuals subject to the Proclamation landed *after* either the Court's written or oral Orders were issued;

3) whether any flight with individuals subject to the Proclamation was still in the air *after* either the Court's written or oral Orders were issued; and

4) whether custody of any individuals subject to the Proclamation was transferred to a foreign country *after* either the Court's written or oral Orders were issued.

Dated: March 17, 2025

Respectfully submitted,

Noelle Smith*
Oscar Sarabia Roman*
AMERICAN CIVIL LIBERTIES UNION FOUNDATION
425 California Street, Suite 700
San Francisco, CA 94104
(415) 343-0770
nsmith@aclu.org
osarabia@aclu.org

Arthur B. Spitzer (D.C. Bar No. 235960)
Scott Michelman (D.C. Bar No. 1006945)
AMERICAN CIVIL LIBERTIES UNION FOUNDATION OF THE DISTRICT OF COLUMBIA
529 14th Street, NW, Suite 722
Washington, D.C. 20045
(202) 457-0800
aspitzer@acludc.org
smichelman@acludc.org

/s/ *Lee Gelernt*
Lee Gelernt (D.D.C. Bar No. NY0408)
Daniel Galindo (D.D.C. Bar No. NY035)
Ashley Gorski*
Patrick Toomey*
Omar C. Jadwat*
Sidra Mahfooz*
Hina Shamsi*
AMERICAN CIVIL LIBERTIES UNION FOUNDATION,
125 Broad Street, 18th Floor
New York, NY 10004
(212) 549-2660
lgelernt@aclu.org
dgalindo@aclu.org
agorski@aclu.org
ptoomey@aclu.org
ojadwat@aclu.org
smahfooz@aclu.org
hshamsi@aclu.org

Somil B. Trivedi (D.C. Bar No. 1617967)
Bradley Girard (D.C. Bar No. 1033743)
Michael Waldman (D.C. Bar No. 414646)
Sarah Rich*
Skye Perryman (D.C. Bar No. 984573)
DEMOCRACY FORWARD FOUNDATION
P.O. Box 34553
Washington, DC 20043
Phone: (202) 448-9090
Fax: (202) 796-4426
strivedi@democracyforward.org
bgirard@democracyforward.org
mwaldman@democracyforward.org
srich@democracyforward.org
sperryman@democracyforward.org

*Attorneys for Plaintiffs-Petitioners*

*Pro bono representation certificates or Pro hac vice motions forthcoming*