# IN THE UNITED STATES COURT OF APPEALS FOR THE DISTRICT OF COLUMBIA CIRCUIT

J.G.G., et al.,
*Plaintiffs-Appellees*,

v.

DONALD J. TRUMP, et al.,
*Defendants-Appellants*.

On Appeal from the United States District Court
for the District of Columbia
No. 1:25-cv-766

## BRIEF OF *AMICI CURIAE* SOUTH CAROLINA, VIRGINIA, AND 24 OTHER STATES IN SUPPORT OF DEFENDANTS-APPELLANTS' EMERGENCY MOTION FOR A STAY PENDING APPEAL

ALAN WILSON
  *Attorney General of South Carolina*
ROBERT D. COOK
  *Solicitor General*
Thomas Hydrick
  *Asst. Dep. Solicitor General*
JOSEPH D. SPATE*
  *Asst. Dep. Solicitor General*
1000 Assembly Street
Columbia, SC 29201
(803) 734-3371
josephspate@scag.gov
*Counsel of Record

JASON S. MIYARES
  *Attorney General of Virginia*
KEVIN M. GALLAGHER
  *Principal Deputy Solicitor General*
202 North Ninth Street
Richmond, VA 23219
(804) 786-2071
kgallagher@oag.state.va.us

*Counsel for* Amici Curiae

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................. ii

INTEREST OF AMICI CURIAE ........................................................... 1

SUMMARY OF ARGUMENT ................................................................ 2

ARGUMENT ............................................................................................ 3

I.    The District Court's Order Undermines the Security of the States. ............................................................................... 3

II.   The District Court's Order Undermines the President's Constitutional and Statutory Authority over Foreign Affairs and National Security. ...................................................... 8

CONCLUSION ...................................................................................... 10

ADDITIONAL COUNSEL ................................................................... 12

CERTIFICATE OF COMPLIANCE ..................................................... 14

CERTIFICATE OF SERVICE .............................................................. 15

# TABLE OF AUTHORITIES

**Cases**                                                              **Pages(s)**

*Arizona v. United States*,
  567 U.S. 387 (2012) ...................................................................... 6
*Chaplaincy of Full Gospel Churches v. England*,
  454 F.3d 290 (D.C. Cir. 2006) ........................................................ 3
*Harisiades v. Shaughnessy*,
  342 U.S. 580 (1952) ...................................................................... 9
*Ludecke v. Watkins*,
  335 U.S. 160 (1948) ................................................................. 9, 10
*Medtronic, Inc. v. Lohr*,
  518 U.S. 470 (1996) ...................................................................... 6
*United States v. Curtiss-Wright Export Corp.*,
  299 U.S. 304 (1936) ...................................................................... 9
*Yakus v. United States*,
  321 U.S. 414 (1944) ...................................................................... 3
*Youngstown Sheet & Tube Co. v. Sawyer*,
  343 U.S. 579 (1952) .................................................................... 10

**Statutes**

8 U.S.C. § 1357(g) .............................................................................. 7
50 U.S.C. § 21 ................................................................................ 8, 9

# INTEREST OF AMICI CURIAE

*Amici curiae* are the States of South Carolina, Virginia, Alabama, Alaska, Arkansas, Florida, Georgia, Idaho, Indiana, Iowa, Kansas, Kentucky, Louisiana, Mississippi, Missouri, Montana, Nebraska, North Dakota, Ohio, Oklahoma, Pennsylvania, South Dakota, Tennessee, Texas, Utah, and West Virginia (collectively, the *Amici* States). Each State is directly impacted by criminal activity perpetuated by violent foreign gangs. And each State has an interest in protecting its citizens from such criminal activity. That's why *Amici* States support robust actions against gangs like the notorious Venezuelan gang Tren de Aragua ("TdA") that are wreaking havoc within our borders.

President Trump's recent executive order uses constitutional and statutory authority to deport Venezuelan citizens who are members of TdA and are not American citizens or lawful permanent residents. The same day a complaint was filed challenging this action and without briefing from the federal government, however, a lone district judge certified a class of noncitizens in custody affected by the order and issued a nationwide temporary restraining order barring the Administration

from immediately removing foreign terrorists, regardless of the threat they present to our citizens.

*Amici* States accordingly ask this Court to stay the district court's Temporary Restraining Order ("TRO") pending appeal.

**SUMMARY OF ARGUMENT**

The TRO should be stayed for at least two reasons.

First, the TRO undermines the security of the States. TdA has ravaged innocent citizens across the country, and the States finally have a welcome partner in the Presidency willing to fight for the safety and security of the American people. But when President Trump endeavored to remove violent TdA members from the United States, a single district court judge prevented him from carrying out that mission anywhere in the country, allowing TdA to continue its operations, and criminal activity, in *Amici* States. The public interest weighs in favor of the safety and security of American citizens.

Second, the TRO fails to properly evaluate the sources of the President's authority for his recent actions. President Trump acted pursuant to both constitutional and statutory authority. At this confluence of two significant fonts of authority, the judiciary should have

2

been reticent to issue a nationwide injunction—at the very least without briefing from the federal government. That error alone calls for a stay of the TRO pending appeal.

## ARGUMENT

### I. The District Court's Order Undermines the Security of the States.

The district court failed to fully weigh the public interest, overlooking how its TRO will directly undermine the security of the States. *See Chaplaincy of Full Gospel Churches v. England*, 454 F.3d 290, 297 (D.C. Cir. 2006) (describing the standard for injunctive relief); *see also Yakus v. United States*, 321 U.S. 414, 440 (1944) ("But where an injunction is asked which will adversely affect a public interest for whose impairment, even temporarily, an injunction bond cannot compensate, the court may in the public interest withhold relief until a final determination of the rights of the parties, though the postponement may be burdensome to the plaintiff."). The President's proclamation describing TdA's brutality comports with the recent experiences of the States with TdA and thus underscores the importance of the proclamation to public safety efforts in the States.

Pursuant to his constitutional and statutory authority, the President published a presidential proclamation regarding TdA on March 15, finding and declaring that TdA "commits brutal crimes, including murders, kidnappings, extortions, and human, drug, and weapons trafficking" and that TdA "has engaged in and continues to engage in mass illegal migration to the United States to further its objectives of harming United States citizens, undermining public safety, and supporting the Maduro regime's goal of destabilizing democratic nations in the Americas, including the United States." President Donald J. Trump, *Invocation of the Alien Enemies Act Regarding the Invasion of the United States by Tren de Aragua*, Mar. 15, 2025 (https://tinyurl.com/2s392utm) (hereinafter, "March 15 Proclamation").

The experiences of the States bolster and support the President's findings on this point, as the States and their citizens have been subject to escalating acts of violence committed by TdA. In the past year alone, TdA members have murdered American citizens, seized property, and violently attacked police officers. *See* Joe Chatham, FEDERATION FOR AMERICAN IMMIGRATION REFORM, *DHS Memo Reveals Tren de Aragua Now Operates in 16 States*, Nov. 2024 (https://tinyurl.com/5e7muxrr).

In particular, a TdA member's horrific murder of Laken Riley necessitated the passage of the Laken Riley Act, mandating federal detention of illegal aliens who are arrested for certain crimes. *See Attorneys General Alan Wilson, Chris Carr, and Ashley Moody, Letter to Senate Leadership*, Mar. 13, 2024 (https://tinyurl.com/2x5r6ce6). TdA also engaged in a hostile takeover of an apartment complex in Aurora, Colorado. Nicole C. Bramila, THE DENVER GAZETTE, *Venezuelan gang demanded 50% of all rent at Aurora complex, law firm says*, Oct. 23, 2024 (https://tinyurl.com/2cmwavwu). TdA reportedly terrorized the apartment complex with violence and intimidation, and used it as a hub for illegal activities, such as prostitution of minors. *Id.* And TdA has notably given a "green light" to its members to attack law enforcement officers. Adam Shaw, FOX NEWS, *Venezuelan gang Tren de Aragua gives 'green light' to members to attack cops: officials*, July 30, 2024 (https://tinyurl.com/385skd68).

TdA's presence is felt far and wide. Last month, ICE officials arrested multiple TdA members during a routine daily operation in Charleston, South Carolina. U.S. IMMIGRATION AND CUSTOMS ENFORCEMENT, *ICE operations between Feb. 1 and Feb. 6*, Feb. 10, 2025

5

(https://tinyurl.com/2vtexbsa). TdA has been linked to Virginia as well, in addition to a host of other states. Dan Gooding, NEWSWEEK, *Map Shows Locations Where Venezuelan Gang Tren de Aragua are Active*, Nov. 20, 2024 (https://tinyurl.com/mw528m74). Indeed, TdA is on the very doorstep of the nation's capital in northern Virginia. See Tom Roussey, WJLA, *Violent Venezuelan gang now appears to be in the DC area*, Nov. 21, 2024 (https://tinyurl.com/mr3v35er). As long as TdA is allowed to continue operating and expanding throughout the United States, the gang will continue to rain down a deluge of criminal activity upon the States. In short, the States and their citizens are being actively harmed by TdA's infiltration.

In response to these harms, States have attempted to act and will continue to act to protect their citizens. After all, perhaps the core function of the States' police powers is "to protect the health and safety of their citizens." *Medtronic, Inc. v. Lohr*, 518 U.S. 470, 475 (1996). States can act to defend their citizens from safety risks posed by illegal immigrants. *See Arizona v. United States*, 567 U.S. 387, 418 (2012) (Scalia, J, concurring) (describing the States' constitutional role in certain immigration settings). And States and localities can act as

6

important partners in federal immigration efforts. *See* 8 U.S.C. § 1357(g). Many of the undersigned States have undertaken these measures (and will continue to do so), and some of the undersigned States have attempted to take the fight directly to TdA. OFFICE OF THE GEORGIA ATTORNEY GENERAL, *Carr Launches Operation "Hold the Line," Takes the Fight to Transnational Gangs*, Feb. 6, 2025 (https://tinyurl.com/28zc5ujd).

But States are often constrained when countering threats posed by transnational criminal organizations like TdA. *See* UNITED STATES DEPARTMENT OF THE TREASURY, *Treasury Sanctions Tren de Aragua as a Transnational Criminal Organization*, Jul. 11, 2024 (https://tinyurl.com/yhwd7hub) (designating TdA as a significant transnational criminal organization). States are not in the position to unilaterally negotiate with foreign governments. *See* March 15 Proclamation ("TdA is closely aligned with, and indeed has infiltrated, the Maduro regime, including its military and law enforcement apparatus."). For that reason, the States welcome a President's use of his "core powers as President and Commander-In-Chief to defend the

7

American People from an urgent threat." THE WHITE HOUSE, *Statement from the Press Secretary*, Mar. 16, 2025 (https://tinyurl.com/ycx9mtd3).

By issuing a universal TRO without the benefit of briefing from the United States or any other interested parties, the district court failed to fully consider the relevant public interests and balance of the harms in this case.

**II. The District Court's Order Undermines the President's Constitutional and Statutory Authority over Foreign Affairs and National Security.**

The district court also erred by failing to afford the President proper deference in his exercise of his statutory and constitutional powers. In doing so, the district court violated important principles of separation of powers.

President Trump issued his Proclamation by the authority vested in the presidency "by the Constitution and the laws of the United States of America, including 50 U.S.C. 21." March 15 Proclamation. Both sources of authority provide independent bases for meeting the threat of TdA. The combination of the two should have given the district court significant pause before it issued a nationwide TRO bringing that authority to a complete halt.

8

Article II of the Constitution provides the President with substantial authority over foreign affairs and national security. The Supreme Court has long recognized the "plenary and exclusive power of the President as the sole organ of the federal government in the field of international relations—a power which does not require as a basis for its exercise an act of Congress." *United States v. Curtiss-Wright Export Corp.*, 299 U.S. 304, 320 (1936). As the Court has explained, it is "pertinent to observe that any policy toward aliens is vitally and intricately interwoven with contemporaneous policies in regard to the conduct of foreign relations, the war power, and the maintenance of a republican form of government." *Harisiades v. Shaughnessy*, 342 U.S. 580, 588-89 (1952).

Further, the President was acting pursuant to a statute passed by Congress, 50 U.S.C. § 21. The President's authority under that statute is uniquely ill-suited for judicial review. As the Supreme Court explained in interpreting the statute, "full responsibility for the just exercise of this great power may validly be left where the Congress has constitutionally placed it—on the President of the United States." *Ludecke v. Watkins*, 335 U.S. 160, 173 (1948). Because "[t]he Founders in their wisdom made

9

him not only the Commander-in-Chief but also the guiding organ in the conduct of our foreign affairs," the President "who was entrusted with such vast powers in relation to the outside world was also entrusted by Congress, almost throughout the whole life of the nation, with the disposition of alien enemies during a state of war." *Id*.

Each of those fonts of authority are independently compelling. Working in tandem, however, they provide a strong basis for executive action against TdA. "When the President acts pursuant to an express or implied authorization of Congress, his authority is at its maximum, for it includes all that he possess in his own right plus all that Congress can delegate." *Youngstown Sheet & Tube Co. v. Sawyer*, 343 U.S. 579, 635 (1952) (Jackson, J., concurring). The district court should have been circumspect in granting a nationwide TRO under these circumstances. Its failure to do so should be remedied.

## CONCLUSION

This Court should stay the district court's Temporary Restraining Order pending appeal.

[Signature page follows]

Dated: March 18, 2025                Respectfully submitted,

s/ Joseph D. Spate
ALAN WILSON                          JASON S. MIYARES
  *Attorney General of South           *Attorney General of Virginia*
  Carolina*                          KEVIN M. GALLAGHER
ROBERT D. COOK                         *Principal Deputy Solicitor*
  *Solicitor General*                  *General*
Thomas Hydrick                       202 North Ninth Street
  *Asst. Dep. Solicitor General*     Richmond, VA 23219
JOSEPH D. SPATE*                     (804) 786-2071
  *Asst. Dep. Solicitor General*     kgallagher@oag.state.va.us
1000 Assembly Street
Columbia, SC 29201
(803) 734-3371
josephspate@scag.gov
*Counsel of Record                   *Counsel for* Amici Curiae

# ADDITIONAL COUNSEL

STEVE MARSHALL
Attorney General
State of Alabama

TREG TAYLOR
Attorney General
State of Alaska

TIM GRIFFIN
Attorney General
State of Arkansas

JAMES UTHMEIER
Attorney General
State of Florida

CHRISTOPHER M. CARR
Attorney General
State of Georgia

RAÚL R. LABRADOR
Attorney General
State of Idaho

THEODORE E. ROKITA
Attorney General
State of Indiana

BRENNA BIRD
Attorney General
State of Iowa

KRIS KOBACH
Attorney General
State of Kansas

RUSSELL COLEMAN
Attorney General
Commonwealth of Kentucky

LIZ MURRILL
Attorney General
State of Louisiana

LYNN FITCH
Attorney General
State of Mississippi

ANDREW BAILEY
Attorney General
State of Missouri

AUSTIN KNUDSEN
Attorney General
State of Montana

MICHAEL T. HILGERS
Attorney General
State of Nebraska

DREW H. WRIGLEY
Attorney General
State of North Dakota

DAVE YOST
Attorney General
State of Ohio

GENTNER DRUMMOND
Attorney General
State of Oklahoma

DAVID W. SUNDAY, JR.
Attorney General
Commonwealth of Pennsylvania

MARTY JACKLEY
Attorney General
State of South Dakota

JONATHAN SKRMETTI
Attorney General
State of Tennessee

KEN PAXTON
Attorney General
State of Texas

DEREK BROWN
Attorney General
State of Utah

JOHN B. MCCUSKEY
Attorney General
State of West Virginia

## CERTIFICATE OF COMPLIANCE

This amicus brief complies with the type-volume limit of Federal Rule of Appellate Procedure 29(a)(5) because it contains 1,811 words. This brief also complies with the typeface and type-style requirements of Federal Rule of Appellate Procedure 32(a)(5)–(6) because it was prepared using Microsoft Word in 14-point Century Schoolbook, a proportionally spaced typeface.

<u>s/ Joseph D. Spate</u><br>
Joseph D. Spate

**CERTIFICATE OF SERVICE**

I certify that on March 18, 2025, I caused this document to be electronically filed with the Clerk of Court using this Court's CM/ECF system, which will send a notice of docketing activity to all parties who are registered through CM/ECF.

s/ Joseph D. Spate
Joseph D. Spate